NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 20 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TERRANCE WESLEY GIPSON, <br><br> Petitioner-Appellant, <br><br> v. <br><br> MARK NOOTH, <br><br> Respondent-Appellee. | No. 18-35370 <br><br> D.C. No. 2:15-cv-02244-CL <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief Judge, Presiding

Submitted May 16, 2019[**]
Portland, Oregon

Before: N.R. SMITH, WATFORD, and R. NELSON, Circuit Judges.

Terrence Gipson appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus. Reviewing de novo, subject to the Antiterrorism and Effective Death Penalty Act of 1996, we affirm. *See Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Gipson challenges his convictions of first degree sodomy and second degree sexual abuse, arguing that trial counsel was ineffective in failing to impeach the victim with her alleged prior inconsistent statements. To succeed on this claim, Gipson "must 'show that counsel's performance was deficient' and that 'the deficient performance prejudiced the defense.'" *Boyer v. Chappell*, 793 F.3d 1092, 1101–02 (9th Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show prejudice, Gipson "must show 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 1102 (quoting *Strickland*, 466 U.S. at 694).

It was not objectively unreasonable for the state court to conclude that Gipson failed to demonstrate a reasonable probability that introducing the victim's alleged inconsistent statements would have changed the outcome at trial. *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). First, it is not clear that the man referenced in N.J.'s police statement was Gipson and cross-examining Officer Remily about N.J.'s initial account to him would likely have highlighted how closely N.J.'s original account tracked her trial testimony.

Next, the police report does not state that N.J. *told her mother* that she was "grabbed" and "put into" a car. Rather, the report only states that N.J.'s mother *told the police* that N.J. was "grabbed by a black male at the Transit Mall and put into a silver car." In fact, the same police report summarizing Officer Remily's

interview with N.J. reveals that N.J. originally told Officer Remily that she was never physically restrained from going to the bus. Additionally, even assuming N.J. told her mother that she was grabbed, that is not entirely inconsistent with N.J.'s testimony, given her repeated statements that she only got into Gipson's car reluctantly, because she was "scared" after Gipson "raised his voice and told her to get in the car."

Finally, Gipson assumes without any offered support that Donna Hulon would have testified that N.J. initially stated that she was "raped." However, it is plausible that Hulon's use of that term in her statement to the police was merely her own characterization of the incident, based on what N.J. had told her, or the result of her own misunderstanding. Additionally, Oregon law also appears sometimes to include "sodomy" within its legal definition of "rape." *See* Or. Rev. Stat. § 419B.005(1)(a)(C).

**AFFIRMED.**